```
          IN THE UNITED STATES DISTRICT COURT
                      FOR THE
             MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| JACK EDWARDS, | : | |
| Plaintiff | : | |
| v. | : | CIVIL NO. 3:CV-16-45 |
| WARDEN J. E. THOMAS, ET AL., | : | (Judge Conaboy) |
| Defendants | : | |

FILED SCRANTON
FEB 0 7 2017
Per_____
DEPUTY CLERK

## MEMORANDUM

Jack Edwards (Plaintiff), an inmate presently confined at the Benner State Correctional Institution, Bellefonte, Pennsylvania (SCI-Benner), initiated this pro se civil rights action.  Service of the Complaint was previously ordered.

Named as Defendants are four officials of the Pennsylvania Department of Corrections (DOC) Secretary John Wetzel, Attorney Debra Rand, Regional Deputy Secretary Tabb Brickell, and Director of Religious Accommodations Shawn Kephart.  Edwards is also proceeding against four SCI-Benner officials:  Superintendent Tammy Ferguson, Chaplain Matthew McCoy, Chief of Food Services Marcia Noles;, and Grievance Coordinator Holly Becker-Bachic.

Plaintiff states that he arrived ar SCI-Benner on or about April, 2013.  He describes himself as being "a long standing Orthodox Muslim" who follows the eating practices of Islam.  See Doc. 1, p. 3.  The Complaint generally indicates that SCI-Benner

1

Chief of Food Services Noles is responsible for the prison's dietary practices.

According to the Complaint, the SCI-Benner no animal product diet does not satisfy Plaintiff's religious need for an Halal diet. Edwards adds that the prison's kitchen utensils are "religiously contaminated' because they have been used to prepare pork products. Plaintiff contends that although the Kosher diet offered at the prison is the same as a pork free Halal diet his request to be provided with a Kosher diet was denied by Defendants McCoy and Kephart because he is not Jewish. The Complaint concludes that the denial of a Kosher diet violated Plaintiff's rights under the First, Eighth, and Fourteenth Amendments as well as the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA). Edwards also raises a pendent state law claim of intentional infliction of emotional distress. Plaintiff does not specify what type of relief he is seeking.

Presently pending is a motion to dismiss the Complaint filed by the Defendants.[1] See Doc. 11. The unopposed motion is ripe for consideration.

## Discussion

Defendants raise the following arguments for partial dismissal: (1) there is no mention of Defendants Wetzel, Ferguson,

---

1. Incorporated within the Complaint is a request that this matter be joined with Turner v. Religious Accomodation Committee, Civil No. 3:13-cv-2680 (Kosik, J.). See Doc. 1, p. 4.
   The pending motion to dismiss does not address the request for joinder or more importantly, Edwards' First Amendment claim. Accordingly it will be construed as seeking partial dismissal

2

Becker-Bachic, Brickell and Rand in the body of the Complaint; (2) the claims against Defendants Wetzel, Ferguson, Becker-Bachic, Brickell, Rand, and Noles are subject to dismissal on the basis of lack of personal involvement; (3) there is no cognizable Eighth Amendment claim that Banks was subjected to unconstitutional conditions of confinement; (4) the Complaint does not plead a viable claim under the Fourteenth Amendment; and (5) the state law tort claim is barred by Pennsylvania's statutory sovereign immunity. See Doc. 14, p. 3-4.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must

contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct at 1949. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Personal Involvement**

Defendants' first two arguments contend that the claims against Secretary Wetzel, Superintendent Ferguson, Grievance coordinator Becker-Bachic, Regional Deputy Secretary Brickell, Attorney Rand, and Chief of Food Services Noles are subject to dismissal because there are no allegations of personal involvement by those officials in any constitutional misconduct.

4

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a

5

prisoner."). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Based upon a review of the Complaint, this Court agrees with Defendants' contention that absent being listed as Defendants there are no factual assertions set forth against Secretary Wetzel, Superintendent Ferguson, Attorney Rand, Grievance Coordinator Becker-Bachic, and Regional Secretary Brickell. There are no discernible claims in the Complaint that any of these individuals were involved in the day to day supervision of the Plaintiff. Furthermore, it appears that Edwards is attempting to establish liability against those persons based upon either their respective supervisory capacities or their review of his institutional grievances. Pursuant to the above discussion, either approach is insufficient for establishing civil rights liability against those Defendants. Accordingly, dismissal will be granted in favor of Defendants Wetzel, Rand, Ferguson, Becker-Bachic and Brickell.[2]

With respect Chief of Food Services Noles, the Complaint contends only that Noles is responsible for the prison's dietary

---

2. There are also no discernible state law claims asserted against those individuals

practices. Given the liberal treatment afforded to pro se filings, the Complaint arguably asserts a claim that Noles violated Plaintiff's First Amendment rights by allowing the use of "religiously contaminated" utensils and serving pieces. Doc. 1, p. 3. Defendant Noles' request for dismissal on the basis of lack of personal involvement will be denied at this juncture.

**Eighth Amendment**

Defendants' motion next asserts that the Complaint fails to set forth a discernible Eighth Amendment claim. See Doc. 14, p. 9. Specifically, they asser that the alleged denial of a Kosher diet did not deprive Edwards of a basis necessity of life and as such did not implicate the Eighth Amendment. As previously noted, this argument is unopposed.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. The United States Supreme Court in Sandin v. Conner, 515

U.S. 472, 480-84 (1995) shifted the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. The only constitutionally protected interest which generally may be created by a prison regulation is one to be free from a condition which results in atypical and significant hardship in relation to the unusual incidents of imprisonment.

Only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim. Warren v. Irvin, 985 F. Supp. 350 (W.D. N.Y. 1997); Williams v. Berge, 2002 WL 32350026 *2 (W.D. Wis. 2002); Moss v. Ward, 450 F. Supp. 591, 596 (W.D. N.Y. 1978)(deprivation of one meal may not be cruel and unusual punishment). This is not a case where a prisoner is pursuing a claim that he was deprived of food or served food that was contaminated. Rather, his complaint asserts only that the meals served did not satisfy his religious needs. Accordingly, this Court agrees that a viable claim under the Eighth Amendment has not been stated.

**Fourteenth Amendment**

Defendants' next argument contends that the Complaint fails to allege a cognizable claim under the Fourteenth Amendment because had no liberty or property interests in Kosher meals. See Doc. 14, p. 11.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to determine whether a due process violation has occurred, an initial determination must

8

be made that a protected property or liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995). A protected liberty interest may be created by either the Due Process Clause itself or by state law. Id. Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Conversely, there can be no due process violation where there is no protected liberty interest.

The United States Court of Appeals for the third Circuit has clearly recognized that prisoners do not have a liberty interest in receiving a diet which complies with their religious beliefs. Contant v. Lowe, 450 Fed Appx. 187, 190 (3d Cir. 2011). Based upon the holding in Contant, Defendants are entitled to entry of dismissal of the Plaintiff's claim under the Fourteenth Amendment.

**Religious Interference**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." U.S. Const. Amend. I. It is well settled that imprisonment necessarily results in restrictions on the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). However, inmates must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). To set forth a viable constitutional claim a prisoner must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise

9

protections are deemed applicable. Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

A viable claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA) must establish that the inmate had a sincerely held religious belief and that a prison policy or official practice substantially burdened his exercise of those religious beliefs. A substantial burden is one where: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010). Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means of doing so. See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007); Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).[3]

As noted above, an inmate plaintiff must establish that he had a sincerely held belief which was religious in nature and that a prison policy or official practice substantially burdened his exercise of those religious beliefs in order to succeed on a First

---

3. However, RLUIPA does not permit an action against Defendants in their individual capacities." Sharp v. Johnson, 669 F.3d 144, 153 (3d Cir. 2012). Moreover, sovereign immunity has not been waived with respect to private claims for monetary damage under RLUIPA against state officials in their official capacities. See id.; Sossamon v. Texas, ___ U.S. ___, 131 S.Ct. 1651, 1660 (2011). Moreover, since Plaintiff is no loner held at the Dauphin County Prison, any request for injunctive relief is moot.

10

Amendment claim.  Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa, 662 F.2d at 1029-30.  There is no argument raised not is there any basis for a determination at this stage in the proceedings that Plaintiff's spiritual beliefs were not sincerely held as required under both the First Amendment and RLUIPA.

The Court of Appeals for the Third Circuit in Williams v. Morton, 343 F.3d 212 (3d. Cir. 2003) addressed a claim by Muslim prisoners that the denial of Halal meat meals violated their constitutional rights.  After employing the Turner v. Safley, 482 U.S. 78 (1987) four part test, the Court of Appeals concluded that providing a vegetarian meal rather than one with Halal meat furthered legitimate penological interests of simplified food service, institutional security, and budgetary constraints.  The Court additionally noted that in light of the substantial deference afforded prison administrators, providing prisoners with a pork free vegetarian diet provided a reasonable alternative means of expressing their religious beliefs.

Since this matter is before the court on a motion to dismiss and the Defendants have neither addressed the merits of Plaintiff's First Amendment claim not provided their version of the relevant facts, a proper Turner analysis regarding what restrictions and opportunities were provided to Inmate Edwards with respect to his religious dietary needs is not presently feasible.

Based upon those considerations, the Plaintiff's unaddressed claims that  three (3) Defendants violated his First Amendment right to exercise his religious beliefs will proceed.

11

**State Law Claims**

Defendants further maintain that Plaintiff's state law claims should be dismissed because they are entitled to sovereign immunity under Pennsylvania state law.

Prior to entertaining this argument for dismissal, this Court must make a determination as to whether jurisdiction will be exercised over the state law claim against the Defendants. Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Aldinger v. Howard, 427 U.S. 1, 9 (1976). Supplemental jurisdiction may be declined over a claim when the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3) (1997). When rendering a determination regarding pendent jurisdiction district courts should consider judicial economy, convenience, and fairness to the litigants. New Rock Asset Partners v. Preferred Entity Advancements, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim. Id. (citing Lentino v. Fringe Emp. Plans, Inc., 611 F. 2d 474, 479 (3d Cir. 1979)). However, if a federal claim is dismissed prior to trial, the district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so."

Once the basis for federal jurisdiction disappears, a district court should only exercise its discretion to entertain

12

pendent claims if extraordinary circumstances exist. <u>New Jersey Department of Enviromental Protection v. Glouchester Enviromental Management</u>, 719 F. Supp. 325, 337 (D. N.J. 1989). A decision as to whether this Court should exercise jurisdiction over the surviving state law tort claims against the three Remaining Defendants will be held in abeyance pending submission of a response to the First Amendment claim. An appropriate Order will enter.

/s/ Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: FEBRUARY 6th, 2017